Richard W. DRAKE, Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS, Kevin Wilson, Northwest Toxicology, Inc., David J. Kuntz, Elsohly Laboratories, Inc., Dr. William H. Whaley, and West Paces Ferry Medical Clinic, Defendants.

No. 02–CV–1924 (FB)(RML).

United States District Court, E.D. New York.

July 8, 2004.

Sam O. Maduegbuna, Esq., Maduegbuna Cooper & Ekperigin LLP, New York City, for Plaintiff.

Demetrios C. Batsides, Esq., Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York City, for Defendants Laboratory Corporation of America Holdings and Kevin Wilson.

Jeffrey Hurd, Esq., Phelan, Burke & Scolamiero, LLP, Albany, NY, for Defendants Northwest Toxicology, Inc. and David J. Kuntz.

Sean P. Callahan, Esq., Devitt, Spellman Barrett, Callahan & Kenney, LLP, Smithtown, NY, for Defendant ElSohly Laboratories, Inc.

Ira Rosenstein, Esq., Orrick, Herrington & Sutcliffe LLP, New York City, for Defendant William H. Whaley.

### *MEMORANDUM AND ORDER*

BLOCK, District Judge.

Familiarity with the procedural history in this action is presumed. *See Drake v. Laboratory Corp. of America Holdings,* 290 F.Supp.2d 352, 362–63 (E.D.N.Y.2003). In sum, plaintiff Richard Drake ("Drake") filed a complaint alleging both federal and state claims; in response to defendants' motions to dismiss, the Court dismissed plaintiff's federal claims and exercised supplemental jurisdiction over his state claims, finding that they were not preempted by federal law, but certified the preemption question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[1] In

---

1. On December 24, 2003, the Court denied Drake's request to amend its November 18, 2003 Memorandum and Order to enter partial final judgment, pursuant to Fed.R.Civ.P. 54(b), as to the dismissal of his federal claims.

light of the Second Circuit's subsequent summary order, denying defendants' petitions for leave to proceed with an interlocutory appeal, and the Circuit Court's comments questioning this Court's jurisdiction over the remaining state common law tort claims—namely, whether diversity jurisdiction existed, and whether this Court had conducted "a full analysis under 42 U.S.C. § 1367" when it decided to exercise supplemental jurisdiction, *Drake v. Laboratory Corp., et. al,* No. 04–0137, (2d Cir. Mar. 4, 2004), the Court issues this decision regarding its jurisdiction over the state law claims; moreover, because of facts not previously before the Court at the time of its § 1292(b) certification, it once again certifies the preemption issue for interlocutory appeal.

## I. Diversity Jurisdiction

Under federal diversity jurisdiction, the court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [*inter alia* ] citizens of different states." 28 U.S.C. § 1332(a)(1). Moreover, "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co., Inc. v. Scs Communications, Inc.,* 251 F.3d 315, 322 (2d Cir.2001).

Jurisdiction is assessed "as of the moment the complaint was filed," *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,* 241 F.3d 154, 163 (2d Cir.2001), even if a complaint is later amended to assert diversity jurisdiction. *See Le Blanc v. Cleveland,* 248 F.3d 95, 99–100 (2d Cir.2001) ("an amendment to allege diversity jurisdiction relates back under Rule 15 of the Federal Rules of Civil Procedure, and therefore we assess [plaintiff's] citizenship at the time the complaint was first filed"). "Federal jurisdiction is not defeated if one party, subse-quent to the filing of a complaint, becomes a citizen of the same state as his opponent." *E.R. Squibb & Sons,* 241 F.3d at 163–64. *See also Le Blanc,* 248 F.3d at 100 ("that [plaintiff] has become a citizen of New York for diversity purposes since filing this lawsuit does not destroy diversity jurisdiction; her status at the time she filed her complaint is controlling"). Thus, the citizenship of each party is based upon citizenship at the time the complaint was filed.

For the purpose of diversity jurisdiction, "[a]n individual's citizenship ... is determined by his domicile." *Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir.2000). "Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (internal quotation and citation omitted).

With regard to corporate citizenship, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The "principal place of business prong does not replace the citizenship of the state of incorporation; it merely adds another state of citizenship—either of which could destroy diversity," *Grunblatt v. UnumProvident Corp.,* 270 F.Supp.2d 347, 351 (E.D.N.Y.2003); therefore, to find complete diversity, a court must be satisfied that the corporate defendants are not incorporated nor have their principal place of business in the same state in which plaintiff was a citizen, at the time the action was filed.

Here, the original complaint was not predicated upon diversity jurisdiction; rather, federal question and supplemental jurisdiction were alleged. The complaint alleged that at the time of filing, Drake was a resident of New York; it did not allege his domicile, nor did it allege facts

about the citizenship of each defendant. *See Canedy v. Liberty Mutual Insur. Co.,* 126 F.3d 100, 103 (2d Cir.1997) ("it is well-established that allegations of residency alone cannot establish citizenship"). However, at a status conference on June 2, 2004, subsequent to the Second Circuit's denial of defendants' petitions for an interlocutory appeal, all the parties contended that complete diversity did indeed exist.

■ At the Court's direction, the parties thereafter submitted affidavits regarding their respective citizenships. The Court is satisfied that complete diversity exists between the parties; none of the defendants are citizens of the same state as plaintiff. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* 257 F.Supp.2d 717, 727 (S.D.N.Y.2003) (finding diversity existed, based upon uncontested affidavits regarding diversity of citizenship). Moreover, the requisite amount in controversy is satisfied. Drake alleges an amount of damages that well exceeds the required $75,000; he claims $100,000 in damages for each state law claim. *See Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC,* 75 F.Supp.2d 279, 281 (S.D.N.Y.1999) (finding amount-in-controversy requirement satisfied because plaintiff alleged damages in excess of $75,000). Defendants do not dispute that the amount in controversy and complete diversity requirements are satisfied.

Accordingly, the Court deems the complaint amended to allege diversity jurisdiction. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *In re Ski Train Fire in Kaprun,* 257 F.Supp.2d at 727 (S.D.N.Y.2003) ("deem[ing] the [c]omplaint amended to include" facts regarding diversity of citizenship, contained in uncontested affidavits); *American National Fire Insurance Co. v. Mirasco, Inc.,* 2000 WL 1368009, *3 (S.D.N.Y. Sept. 20, 2000) ("If the record established complete diversity then the Court could simply deem the complaint to have been amended and the jurisdictional problem would be cured.").

## II. Supplemental Jurisdiction

■ In any event, even if diversity jurisdiction did not exist, the Court would still exercise supplemental jurisdiction over Drake's state law claims. Supplemental jurisdiction is "a doctrine of discretion," *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and a "doctrine of flexibility," which is "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). However, a district court's discretion is "not boundless." *Valencia v. Lee,* 316 F.3d 299 (2d Cir.2003). In its decision, the Court simply stated that it was retaining jurisdiction after "consider[ing] all the factors set forth in the Second Circuit's recent decision in *Valencia*," *Drake,* 290 F.Supp.2d at 375, and discussed fairness to the litigants. The *Valencia* court discussed the following factors a district court should consider when deciding whether to exercise supplemental jurisdiction: (1) whether state law claims "implicate[ ] the doctrine of preemption," *Valencia,* 316 F.3d at 306; (2) "judicial economy, convenience, fairness, and comity," *id.* at 305 (quotation and citation omitted); (3) the existence of "novel or unresolved questions of state law," *id.,* and (4) whether state law claims "concern the state's interest in the administration of its government." *Id.* (quotation and citation omitted). In light of the Second Circuit's concern that the Court did not explicitly address some of these factors, the Court

now discusses each in detail, and concludes that each weighs in favor of retaining jurisdiction.

## A. Federal Preemption

■ Initially, the Court notes that the invocation of a simple federal preemption defense does not create federal question jurisdiction because the well-pleaded complaint rule "requires a complaint invoking federal question jurisdiction to assert the federal question as part of the plaintiff's claim, and precludes invoking federal question jurisdiction merely to anticipate a federal defense." *Fleet Bank Nat'l Assoc. v. Burke*, 160 F.3d 883, 886 (2d Cir.1998); *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 130 (2d Cir.2003) (Newman, J. concurring) ("Because a defense based on federal law does not provide a basis for invoking the jurisdiction of a federal court, defendant's assertion of the usual form of preemption would not provide a basis for invoking the district court's federal question jurisdiction.") (internal citation omitted); *Trump Hotels & Casino Resorts Development Co., LLC, v. Eastern Pequot Indians of Connecticut, Inc.*, 2004 WL 717131, *2 (D.Conn. Mar. 31, 2004) ("as a general rule, a defense that plaintiff's claims are preempted by federal law will not suffice to confer federal question jurisdiction").

■ In contrast, where a "federal statute has been held to wholly displace [a] state-law cause of action through so-called *complete preemption* ... the preemptive force of the statute is deemed so extraordinary" that it creates federal jurisdiction over an entire area of law. *Kings Choice Neckwear, Inc. v. DHL Airways, Inc.*, 2003 WL 22283814, *2 (S.D.N.Y. Oct.2, 2003) (internal quotations omitted and emphasis added); *see also Trump*, 2004 WL 717131, *2. (complete preemption arises when "a federal statute so completely preempts a particular field that any complaint raising claims in that area is deemed to be federal in nature"). "The doctrine of complete preemption is distinguished from a simple defense of preemption in that simple preemption is a question of whether a defense is available under federal law, while complete preemption is a jurisdictional question which focuses on Congress' intent to make the cause of action a federal cause of action and removable despite the fact that the plaintiff's complaint identifies only state claims." *Hooper v. Albany Intern. Corp.*, 149 F.Supp.2d 1315, 1320 (M.D.Ala.2001). Thus "complete preemption ... confers federal question jurisdiction [whereas] simple preemption ... does not." *Duane Reade, Inc. v. Local 338 Retail, Wholesale, Dept. Store Union*, 265 F.Supp.2d 264, 267 (S.D.N.Y.2003). Complete preemption "has thus far been recognized in only three contexts ... the Labor Management Relations Act ... the Employees Retirement Income Security Act ... and some laws covering Indian tribal claims." *Fleet Bank*, 160 F.3d at 886. Defendants assert only simple preemption as a defense to Drake's state law causes of action.

In the seminal *Gibbs* case, the Supreme Court held that the existence of a substantial federal preemption defense may weigh heavily in favor of retaining supplemental jurisdiction:

> [t]here may ... be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. *In the present case, for example, the allowable scope of the state claim implicates the federal doctrine of pre-emption; while this interrelationship does not create statutory federal question jurisdiction, its existence is relevant to the exercise of discretion.*

*Gibbs,* 383 U.S. at 727, 86 S.Ct. 1130 (emphasis added). Although state courts are competent to decide whether state law claims are preempted by federal law, *see, e.g., El Paso Natural Gas Company v. Neztsosie,* 526 U.S. 473, 486, n. 7, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) ("tribal courts, like state courts, can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different"); the *Gibbs* court noted that "federal courts are particularly appropriate bodies for the application of preemption principles." *Gibbs,* 383 U.S. at 729, 86 S.Ct. 1130. Thus, in *Gibbs,* the Supreme Court upheld the district court's exercise of jurisdiction because, *inter alia,* "whether the permissible scope of the state claim was limited by the doctrine of pre-emption afforded a special reason for the exercise of pendent jurisdiction." *Id.* at 729, 86 S.Ct. 1130.

In line with *Gibbs,* the Second Circuit Court of Appeals has consistently considered the issue of federal preemption to be an important factor supporting the exercise of supplemental jurisdiction. *See Valencia,* 316 F.3d at 306 (noting that it has upheld the retention of jurisdiction where the "remaining state law claims implicate[d] the doctrine of preemption"); *Marcus v. AT&T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) (dismissal of state law claims not necessarily mandatory when all federal claims dismissed before trial if state law claims are "closely tied to questions of federal policy or where federal doctrine of preemption may be implicated"); *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 167 n. 4 (2d Cir.1989) ("[w]hile not determinative, the implication of federal labor policy and preemption issues would lend support to the decision by the district

court to exercise pendent jurisdiction over a state law claim"); *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988) (noting that where the federal doctrine of preemption is implicated, it may be "one factor that may sometimes favor retaining pendent jurisdiction"); *see also Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. 817, 825 (S.D.N.Y.1982) ("[b]ecause the state law question in this case ... turns substantially on the question of federal pre-emption, we deem it advisable to retain jurisdiction despite our granting of summary judgment against plaintiff's federal claims").

**B. Judicial Economy, Convenience, Fairness and Comity**

■ Drake has spent a decade litigating claims in this Court relating to his discharge from Delta Airlines. *See Drake v. Delta Airlines, Inc.,* 923 F.Supp. 387 (E.D.N.Y.1996), *Drake v. Delta Airlines, Inc.,* 1997 WL 397428 (E.D.N.Y. Jul. 10, 1997), *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169 (2d Cir.1998) (remanding Drake's Fourth Amendment claim against Delta). As a result, the Court is uniquely familiar with all the underlying facts and history leading to the present litigation; moreover, requiring Drake to initiate new litigation in state court would not only further delay resolution of the case, but would unnecessarily burden the state court system. On its own initiative, the Court contacted the clerk's office of the Kings County Supreme Court and learned that it would take at least eleven to fourteen months from the date of filing the note of issue for the case to be reached for trial.[2] *See Justiana v. Niagara County Dept. of Health,* 45 F.Supp.2d 236, 241 (W.D.N.Y.

---

2. In state court, the note of issue is filed after discovery is complete and the case is ready for trial. *See* N.Y. C.P.L.R. § 3402 (filing of note of issue places case on the calendar);

N.Y. Ct. R. § 202.21 ("no action.. shall be deemed ready for trial ... unless there is a first filed a note of issue accompanied by a certificate of readiness").

1999) (retaining jurisdiction over state law claims where "declining supplemental jurisdiction over the state law claim would substantially delay any determination in [the] matter and result in unfairness to the litigants," and where "the Court ha[d] already expended the resources necessary to become familiar with the legal and factual issues involved in this case"). By contrast, the Court can try the case as soon as discovery and motion practice is concluded. Given the lengthy history of Drake's litigations, and the Court's familiarity with every aspect of his lawsuits, judicial economy, convenience and fairness—notwithstanding basic concerns for comity—would be served by keeping the case with the Court.

### C. Novel or Unresolved Questions of State Law

Drake's common law tort claims do not raise any novel issue of state law.[3] *See Valencia*, 316 F.3d at 306 (where remaining state claims "involve[ ] issues of state law that [are] unsettled," the exercise of supplemental jurisdiction may be an abuse of discretion); *Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir.1992) (abuse of discretion to exercise jurisdiction over remaining claim that presented novel statute of limitations questions under state statute).

### D. State's Interest in the Administration of Government

Drake's common law tort claims do not implicate any state interest in the administration of its government, nor important state policy decisions. *See Valencia*, 316 F.3d at 308 (holding that the district court

abused its discretion in retaining jurisdiction over a state law claim that presented novel issues regarding municipal tort liability, noting that unsettled "fundamental and complex questions involving the balancing of important policies of state government ... are best left to the courts of the state"); *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir.1998) (holding that the district court abused its discretion in exercising jurisdiction over novel claim concerning whether portions of the New York City Administrative Code conflicted with state civil service laws).

### III. Recertification

■ At the June 2, 2004 status conference, all parties requested that the Court recertify the preemption question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court agrees that this is prudent. First, the Second Circuit's summary order denying the petition for interlocutory appeal suggests that its decision may have been different had the Court more thoroughly addressed its basis for jurisdiction over Drake's state law claims; the Court has endeavored to do so in this decision.

Second, and most importantly, there is now a consensus amongst the parties that "an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b); *see also* Tr. at 37 (The Court: "the consensus is that it's going to take many years for this matter to be otherwise litigated, assuming [plaintiff] survives the statute of limitations issue"), whereas previously Drake had opposed the defendants petitions for interlocutory appeal.[4] As be-

---

**3.** Drake has withdrawn his spoliation claim, a claim that has uniformly been rejected by lower state courts, but has yet to be addressed by the New York Court of Appeals. *See Drake*, 290 F.Supp.2d at 374 n. 18 (discussing

spoliation claim); Transcript of June 2, 2004 Status Conference ("Tr.") at 11, 18 (plaintiff's counsel withdrawing spoliation claim).

**4.** The Court learned, through an informal inquiry to the Second Circuit Clerk's Office that

came clear at the status conference, and which may not have been clear when defendants first petitioned for an interlocutory appeal, the parties have protracted and costly discovery and motion practice to conduct with regard to the remaining common law tort claims; the parties have not yet even begun discovery. *See* Tr. at 37 (The Court: "we're a long way from having this case resolved ... discovery has yet to start ... we have complex motions that ... loom and years, perhaps, of litigation that the Circuit Court, perhaps, was not aware of"). All of these efforts would be rendered moot if Drake's claims are ultimately found preempted by federal law; thus, an interlocutory appeal would prevent the potential waste of a tremendous amount of resources for both the Court and the parties; moreover, it would promote the values of judicial efficiency and fairness to the litigants.

For the reasons articulated in the Court's prior Memorandum and Order—namely, the circuit split on the preemption issue between the Fifth and Ninth Circuits in *Frank v. Delta Airlines, Inc.* 314 F.3d 195 (5th Cir.2002) and *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129 (9th Cir. 2003), and that the circuit court in *Frank* accepted the district court's certification for an interlocutory appeal—and for the additional reasons herein set forth, the Court once again determines that the question of whether Drake's common law tort claims are preempted by federal law "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).[5]

**SO ORDERED.**

---

Drake opposed the defendants' petitions for interlocutory appeal. At the status conference, plaintiff's counsel agreed that recertifying the preemption question was now desirable. *See* Tr. at 36.

**5.** The parties are reminded that application for permission to the appeal to the Court of Appeals must be made "within ten days after the entry of [this] order." 28 U.S.C. § 1292(b).