William DALLAS, individually and as father and natural guardian of Westley Dallas and Westley Dallas, individually, Plaintiffs,

v.

ROOSEVELT UNION FREE SCHOOL DISTRICT and Jariah (last name unknown) Defendants.

No. 08CV1390(ADS)(WDW).

United States District Court, E.D. New York.

Aug. 11, 2009.

Murray & Hopkins by Mark A. Murray, Esq., Of Counsel, Hauppauge, NY, Attorneys for the Plaintiffs.

Rutherford & Christie, LLP by Lewis R. Silverman, Esq., of Counsel, New York, NY, Attorneys for the Defendant Roosevelt Union Free School District.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

## I. BACKGROUND

### A. Background Facts

The following facts are derived from the amended complaint and deemed true for the purposes of the present motion. Westley Dallas ("Westley"), now eight years old, is identified as a child with limited english proficiency and suffers from significant language impairment in receptive, expressive and pragmatic skills. The plaintiffs allege that while Westley was enrolled as a student at the Centennial Elementary School, the Roosevelt Union Free School District (the "District") failed to hold a statutorily compliant assessment of Westley and failed to provide an adequate Individualized Education Plan ("IEP") for him. The plaintiffs moved from the school district in May of 2007.

In addition, the complaint alleges that the District knew or should have known

that during this period, Westley was mistreated and repeatedly attacked by a fellow student, "J", culminating in a specific attack on April 11, 2007. The plaintiffs allege that on that date employees of the District denied Westley's father, William Dallas, access to his son; denied William's request to seek medical attention for his son; greeted William with racial, ethnic and vulgar slurs; threatened him with violence; and physically chased him from school grounds.

The complaint raises eleven counts for relief:

Count One: Assault as to both plaintiffs;

Count Two: False imprisonment as to both plaintiffs;

Count Three: Intentional infliction of emotional distress at to both plaintiffs;

Count Four: Battery as to both plaintiffs;

Count Five: Negligent infliction of emotional distress as to both plaintiffs;

Count Six: Violation of 20 U.S.C. §§ 1400–1462, the Individuals with Disabilities Education Act; and 34 C.F.R. Part 300, claiming that the defendants have failed to provide the necessary and appropriate special education services to Westley and stating that the plaintiffs have been aggrieved by the policies, acts, and practices of the defendants, including the findings and decisions of the impartial hearing officer relating to defendants' statutory violation and by the decision of the State Review Officer;

Count Seven: Violation of the fourteenth amendment and 42 U.S.C. § 1983 by refusing to provide Westley with the necessary and appropriate special education services required to treat his special needs and by establishing policies that unlawfully and irrationally differentiate between available education services for special education children within the State of New York;

Count Eight: Violation of the fifth and fourteenth amendments and 42 U.S.C. § 1983 by failing to engage in an individualized assessment of Westley and by improper administrative proceedings in violation of 20 U.S.C. §§ 1400–1462;

Count Nine: Violation of Section 504 of the Rehabilitation Act of 1973, claiming that the defendants discriminated against Westley by refusing to provide him with the necessary and appropriate special education services required and by insisting on an IEP that was potentially detrimental to his development;

Count Ten: Violation of New York Constitution Art. 1 § 11, claiming that the defendants have deprived Westley of his statutory right to equal protection by refusing to provide him with the necessary and appropriate special education services required and by establishing a policy that unlawfully and irrationally differentiates between the treatment and educational needs of special education children and other developmentally disabled children; and

Count Eleven: Violation of 8 NYCRR §§ 200.5 and 200.16, claiming the defendants violated procedural due process by denying plaintiffs' request to amend the IEP devised for Westley, and by failing to engage in an individualized assessment of Westley's unique educational needs.

The complaint seeks monetary damages; an order declaring the defendants in violation of 20 U.S.C. §§ 1400–1462, 29 U.S.C. § 794, 42 U.S.C. § 1983, the fifth and fourteenth amendment of the United States

Constitution, and Article 1, section 11 of the New York State Constitution; an order requiring the defendants to comply with the federal law by reimbursing the plaintiffs for expenses that they have incurred in obtaining special education services for Westley in the home; and attorneys' fees.

The plaintiffs allege federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367(a).

## B. Procedural History

The initial complaint in this action was filed on April 4, 2008. A copy of the complaint and request for waiver of service of summons was sent to the District on or about May 9, 2008 and the signed waiver was filed with the Court on August 21, 2008. The District contends that the request for waiver was accompanied by the amended complaint, which was not filed with the Court until September 25, 2008.

On August 12, 2008, the District requested and the Court granted an extension of the defendants' time to answer or move with respect to the complaint to August 28, 2008. On August 26, 2008 the District filed a motion to dismiss the complaint raising essentially the same arguments asserted in the present motion. On September 23, 2008, the District notified the Court that the plaintiffs failed to file opposition to its motion within ten business days as required by Local Civil Rule 6.1.

On September 25, 2008, the plaintiffs filed the amended complaint and a letter motion request for an extension of time to oppose the defendant's motion to dismiss. The District responded and opposed the plaintiffs' request. The following day, the Court issued an Order explaining that both the defendant's motion to dismiss and the motion for an extension of time to oppose

were rendered moot by the filing of the amended complaint. On November 5, 2008, the Defendant filed the present motion to dismiss the amended complaint.

## II. DISCUSSION

### A. As to Personal Jurisdiction

■ Based upon the procedural history as set forth above, the District contends that the plaintiffs never properly effected service on it and this have failed to obtain personal jurisdiction over it in this action.

Fed.R.Civ.P. 4(c) provides that the plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m). Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice ... or order that the service be made within a specified time." Further, Rule 4(d)(4) provides that when a waiver of service is filed, service is complete "at the time of filing the waiver."

The District contends that the plaintiffs have failed to effectuate service of the amended complaint within 120 days after it was filed on September 25, 2008, and have therefore failed to properly commence any action against the District. Although the plaintiffs do not contest that the technical timing and order of the filings in this action were deficient, they request that the Court consider the claims and decide this case on the merits.

"Rule 4 of the Federal Rules is to be construed liberally to further the purposes of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986) (quoting *Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir.1972)). "Incomplete or improper

service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Grammenos,* 457 F.2d at 1070.

At the time the District filed its motion on November 5, 2008, 120 days had not elapsed from the filing of the Amended Complaint and proper service could have been obtained. Although 120 days has now passed, Rule 4(m) permits the Court to extend the period for service for good cause.

It is undisputed that the District had notice of this action well before the filing of the amended complaint; that a waiver of service was filed in this action on August 21, 2008; and the District received a copy of the amended complaint. Further, the District has not identified any prejudice that it will suffer by continuation of this action. "[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service." *Maruzen Intern., Co. Ltd. v. Bridgeport Merchandise, Inc.,* 770 F.Supp. 155 (S.D.N.Y. 1991).

On the other hand, the plaintiffs would be prejudiced if this action is dismissed on personal jurisdiction grounds as the statute of limitation on at least some of their claims has run and no tolling rule would apply.

Accordingly, the Court denies the District's motion to dismiss for lack of personal jurisdiction, and concludes that service on the District was properly completed under Rule 4. *See In re Ski–Train Fire in Kaprun Austria on Nov. 11, 2000,* No. 01MDL1428, 2007 WL 737491, at *1 (S.D.N.Y. March 9, 2007). The Court will now consider the merits of the remainder of the District's motion.

**B.   As to Subject Matter Jurisdiction**

The District moves to dismiss the plaintiffs' education-related claims on the basis that they have failed to exhaust their administrative remedies.

■■■   In enacting the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2000 & supp.2006), Congress set forth a complex framework specifically designed to guide the relationship between federally funded public schools and their disabled students. The IDEA requires, as part of a "free and appropriate public education," that every public school that receives federal funds develop personalized education curricula for each student with a disability. Every "Individualized Education Plan" is to be developed with the parents and tailored to the particular child's needs and level of development. *Hope v. Cortines,* 872 F.Supp. 14, 16 (E.D.N.Y.1995); *aff'd,* 69 F.3d 687 (2d Cir.1995). "The IEP is a written statement that sets forth, *inter alia,* the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Id.*

■■■   The IDEA mandates that states "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 482 (2d Cir.2002). "Primary among the procedural safeguards employed by IDEA is the requirement that states provide parents of disabled students the right to seek review of any decision concerning their children's education." *Hope,* 872 F.Supp. at 16. As such, parents may file complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate

public education to such child." 20 U.S.C. § 1415(b)(6)(A). Parents must first seek review through an impartial hearing conducted by either the local school district or the state. § 1415(f)(1)(A). If the hearing is done by a local school district, the parents may appeal the decision to the state educational agency. § 1415(g)(1).

■ Congress permits states to fashion their own educational scheme to comply with the IDEA. *Heldman ex rel. v. Sobol,* 962 F.2d 148, 152 (2d Cir.1992). The United States Supreme Court has stated that "[t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the [IDEA] to state and local educational agencies in cooperation with the parents or guardian of the child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

In New York, a Committee on Special Education ("CSE") made up of individuals appointed by the Board of Education or the trustees of a school district prepares the IEPs for disabled children. N.Y. Educ. Law § 4402(1)(b)(1). New York has a two-level system for the review of an IEP. First, a hearing officer, appointed by the Board of Education from a list of state-certified officers, conducts the initial hearing and makes a determination with regard to the action of the CSE. N.Y. Educ. Law § 4404(1). If unsatisfied with this determination, a party may then appeal the determination to a State Review Officer. N.Y. Educ. Law § 4404(2).

■■ "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in federal or state court" and "[f]ailure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." *Cave v. East Meadow Union Free School District,* 514 F.3d 240, 245 (2d Cir.2008). Importantly, exhaustion through the state administrative system is required "not only when [plaintiffs] file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint." *Cave,* 514 F.3d at 246 (emphasis in original).

■ Here, the plaintiffs no longer seek educational services from the District, but instead seek monetary damages, including compensation for monies expended to provide Westley with a home-based education. Monetary damages are not expressly provided for in the IDEA. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 486 (2d Cir.2002). However, Courts considering the exhaustion question have universally found that a claim for monetary damages stemming from the denial of a free appropriate education does not permit the plaintiff to "sidestep the exhaustion requirements of the IDEA." *Polera,* 288 F.3d at 488. Indeed, "[w]here ... a full remedy is available at the time of the injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages." *Id.* at 488; *see also Gardner v. Uniondale Public Sch. Dist.,* No. 08CV847, 2008 WL 4682442, at *7 (E.D.N.Y. Oct. 21, 2008) (suit seeking monetary damages for past injuries commenced after the student moved out of the district was still subject to the exhaustion requirement); *B.D. v. DeBuono,* 130 F.Supp.2d 401, 428 (S.D.N.Y.2000) ("[P]laintiffs should not be allowed to avoid the administrative requirements of IDEA by claiming only monetary damages or other relief not available under IDEA.").

■ Further, although the plaintiffs bring claims under statutory provisions

other than the IDEA, namely the fifth and fourteenth amendments; 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act; the New York State Constitution; and 8 NYCRR §§ 200.5 and 200.16, all of these claims expressly allege that Westley was denied a free and appropriate education by the District. Accordingly, the plaintiffs were required to exhaust their administrative remedies with respect to all of these claims. *Cave*, 514 F.3d at 247 (noting that exhaustion was required in *Polera* and *Hope* even though the claims were premised on statutes other than the IDEA because the plaintiffs were "essentially alleging that they were not provided services tailored to meet their special needs due to deficiencies in their IEP."); *Gardner*, 2008 WL 4682442, at *9 ("[D]espite plaintiffs' claims for damages pursuant to the Rehabilitation Act and state law, plaintiffs must comport with the requirements of IDEA, which is intended to remedy precisely the type of claim presented here-namely, that local school authorities failed to adequately provide a disabled student with appropriate educational services and educational environment.").

▮ Although Count Six of the plaintiffs' complaint states that the "Plaintiffs have been aggrieved by . . . the findings and decisions of the impartial hearing officer relating to Defendants' statutory violation and by the decision of the State Review Officer," the plaintiffs have alleged no facts indicating that they actually pursued the administrative remedies required by the IDEA. The plaintiffs do not dispute this fact, but argue instead that exhaustion in this case is excused by the doctrine of futility.

▮ Exhaustion is not required "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the

law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir.2002); *see also Heldman*, 962 F.2d at 159 (stating that exhaustion will be excused "when pursuit of the administrative remedies would be futile because the agency either was action in violation of the law or was unable to remedy the alleged injury").

Courts have found futility in cases involving systemic violations of the law that could not be remedied by the administrative process because (1) the very procedures for assessing and placing students in educational programs were in issue, or (2) the nature and volume of the complaints made the administrative process an insufficient avenue of redress. *See Cave*, 514 F.3d at 249 (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir.2004))

The plaintiffs rely on two cases in support of their allegation of futility: *J.S. ex rel. N.S. v. Attica Cent. Schs.*, No. 00CV513, 2006 WL 581187 (W.D.N.Y. March 8, 2006) and *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198 (2d Cir.2007). In *J.S.*, the plaintiffs alleged "systemic violations" within respect to their educational needs "including the failure to provide access to school facilities for students with physical disabilities, and the failure to promptly evaluate and appropriately place children with disabilities or suspected disabilities in the least restrictive environment." *J.S.*, 2006 WL 581187, at *1. The district court denied the defendant's motion to dismiss because no adequate administrative remedies existed for the alleged systemic violations. *Id.* at *3. The Second Circuit affirmed, "reasoning that Plaintiffs' Complaint did not challenge the content of the individual student's IEPs, but rather, the School District's to-

tal failure to prepare and implement IEPs." *Id.*

Here, in contrast, Westley is an individual student and the plaintiffs complain about the District's failure to construct and implement an adequate IEP for him alone. *See Cave,* 514 F.3d at 250. There is no allegation of a district wide total failure to construct and implement IEPs for special needs students. Further, the complaint indicates that an IEP was devised for Westley, but contends that it was inappropriate and constructed without an individual assessment of Westley. (Amend. Complaint at ¶¶ 51, 54, 60). Thus, the plaintiffs were required to use the state administrative procedures to grieve the IEP implemented by the District.

The plaintiffs rely on *Coleman* in arguing that "the fact that the defendant did not implement an IEP due to racial animus is the basis for subject matter jurisdiction of the constitutional claims." (Pls. Memorandum of Law in Opposition, at pg. 3). However, discriminatory racial animus was not at issue in *Coleman.* Rather, in *Coleman,* the Second Circuit rejected the district court's finding of futility where "before Coleman could fully exhaust, he would miss graduating with his class and, incidentally, participating in extracurricular activities." *Coleman,* 503 F.3d at 206–07. Here, no exceptional circumstances exist in this case to excuse exhaustion.

The plaintiffs' argument, in opposing the present motion, that race was the underlying reason for the District's failure to construct an IEP for Westley is insufficient to excuse the exhaustion requirement. Regardless of any improper motivating factor in failing to construct an IEP, the plaintiffs' constitutional claims all invoke Westley's right to a free appropriate public education and all state that the District failed Westley in that regard. As plaintiffs allege that it was the District,

not the state, that adopted the discriminatory policy, a full remedy through the state administrative process was available to the plaintiffs at the time of the injury. The plaintiffs therefore were first required to seek redress at the state administrative level prior to filing suit. *Hope,* 872 F.Supp. at 23.

Finally, although not raised by the parties, the fact that Westley has moved out of the school district does not abate the requirement to exhaust administrative remedies. Courts have found the unilateral decision to transfer to another school district before exhausting the administrative process to be insufficient to excuse the exhaustion requirement. *See Gardner,* 2008 WL 4682442, at *14. Accordingly, because the plaintiffs failed to exhaust available administrative channels, this Court lacks subject matter jurisdiction over Counts Six, Seven, Eight, Nine, Ten and Eleven of the amended complaint and they must be dismissed.

**C. As to the Plaintiffs' State Law Tort Claims**

■ 28 U.S.C. Section 1367 provides for supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction, . . . over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, the Court questions whether supplemental jurisdiction obtains over the plaintiffs' state law tort claims as they arise from the District's alleged failure to protect Westley from repeated attacks from another student, rather than from the propriety of his educational plan.

Further, the Court notes that the Second Circuit has stated that the following factors should be considered in determin-

ing whether the exercise of supplemental jurisdiction is appropriate: "(1) whether state law claims 'implicate [ ] the doctrine of preemption,' ... (2) 'judicial economy, convenience, fairness, and comity,'... (3) the existence of 'novel or unresolved questions of state law,'... and (4) whether state law claims 'concern the state's interest in the administration of its government.'" *Drake v. Lab. Corp. of Am. Holdings*, 323 F.Supp.2d 449 (E.D.N.Y.2004) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir.2003)). Here, no federal preemption issue is raised. In addition, although no novel or complex issues of state law are raised, all of the plaintiffs' federal claims have been dismissed well in advance of trial, and the considerations of judicial economy, convenience, fairness and comity favor declining supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Krzykowski v. Town of Coeymans*, No. 06CV835, 2008 WL 5113784, at *7 (N.D.N.Y. Nov. 25, 2008).

Further, the statute of limitations poses no barrier to the dismissal of the plaintiffs' pendent state law claims, Section 1367(d) states that:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

New York allows the plaintiffs six months to refile claims where "an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits...." N.Y. C.P.L.R. 205(a). Accordingly, the Court declines to exercise supplemental jurisdiction over counts One, Two, Three, Four, and Five in the amended complaint.

## III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED,** that the District's motion to dismiss is granted in its entirety and the complaint is dismissed without prejudice; and it is further

**ORDERED,** that the Clerk of the Court is directed to close the case.

**SO ORDERED.**